**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

JOHN CLEMENTE, et al.,

    Plaintiffs,

v.                                                                        Case No. 09-13854

FRANK VASLO, et al.,

    Defendants.
                                                       /

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTIONS FOR
SUMMARY JUDGMENT AND DISMISSING STATE LAW CLAIMS**

Plaintiffs brought suit against Defendants alleging deprivations of constitutional rights pursuant to 42 U.S.C. § 1983 and state law defamation. On September 1, 2010, Defendant City of Lincoln Park ("City") moved for summary judgment. On the same day, Defendants Frank Vaslo, Steve Duchane, and Robert Bartok filed a joint motion for summary judgment. Plaintiffs responded to both motions, and Defendants replied. The court concludes a hearing on these motions is unnecessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons stated below, the court will grant Defendants' motions with respect to the federal law claims and dismiss without prejudice the state law defamation claims.

**I. BACKGROUND**

This case arises out of the termination of certain employees in the Lincoln Park Department of Public Service ("Department") and the circumstances leading to their termination. At the relevant time, Plaintiffs John Clemente, Brian Dailey, John Werksma, Dennis Stol, Charles Taylor, II, Glenn Ray, and Brian DePalma were

employees in the Department, and Plaintiff Karen Stol was the wife of Dennis Stol. Ronald DePalma was the head of the Water Division within the Department and was Brian DePalma's brother. Ronald DePalma resigned his post and is not a party to this litigation. At the time, Vaslo was mayor of Lincoln Park, Duchane was city manager, and Bartok was the head of the Department.

In 2009 Duchane became concerned about unusually high losses in the City's water system and assigned an intern to compile data on water usage. The Department's employees were selected as the sample group because demographic information that would affect water consumption was readily available for them.[1] The report showed suspiciously low usage among several current employees over a two-year period. Correctly suspecting that some or all of the employees on the list had tampered with their water meters,[2] Duchane ordered an investigation. Duchane sought the advice of the city attorney and the Wayne County Prosecutor's Office. It was decided that Detective Brian White of the Wayne County Prosecutor's Office would accompany Bartok to the houses of the current employees with the lowest water usage. Duchane instructed Bartok to request access to inspect the meters. If refused, Bartok was to attempt to obtain access by first citing a City ordinance providing for inspection

---

[1]Plaintiffs claim the City targeted employees in order to reduce the payroll, but they have presented no evidence from which reasonable inferences could be drawn to support such a finding.

[2]Ronald DePalma, not a party in this case, admitted to disconnecting his water meter when confronted. He had the second lowest usage among then-current employees.

of water meters[3] and then by insisting upon access as the Department head and supervisor of the employee.

On June 30, 2009, Bartok and White went to the homes of all Plaintiffs, except DePalma, in order to inspect their meters. They did not attempt to inspect DePalma's home because they first inspected the meter of his brother, Ronald DePalma. Ronald DePalma admitted to disconnecting his meter. Bartok and White were also able to obtain consent to inspect the meters of the Stols, Ray, and Werksma. Plaintiffs contend that consent was given only because Bartok issued direct orders as an employer or otherwise made implied threats of adverse employment actions if Plaintiffs refused to allow the warrantless searches. Bartok and White did not obtain access to the meters of Clemente, Dailey, or Taylor at that time. Clemente and Dailey refused to allow entry, and Taylor did not answer the door at his residence. Bartok then reported to Duchane with photographs of the meters, and warrants were issued to search the houses of Clemente, Dailey, Taylor, DePalma, and another employee who is not a party to this

---

[3]City of Lincoln Park Ordinance § 1042.08:

The duly constituted authorities of the City may, at all reasonable hours, enter, with the occupant's approval, upon any premises where water service is established for the purpose of inspecting and making an examination of the water meter and outward therefrom to the curb stop. Such City authorities may require water connections to meters to be repaired, removed, replaced or changed where the same are defective or not in compliance with this chapter or other applicable ordinances of the City, as such authorities deem necessary. If such repair, replacement or alteration is not made as required, the City may make such repair, replacement or alteration and charge the actual cost thereof to the premises.

Any person whose premises are supplied with water shall be deemed as having assented to the provisions of this chapter.

suit.[4] On July 14, 2009, the water meters of all Plaintiffs were replaced. After removal, the old meters were stored at the Lincoln Park Police Station and subsequently inspected by an expert retained by the City. The expert determined that each of the meters showed signs of tampering. Plaintiffs dispute the accuracy and applicability of the expert's finding, however, they do admit that the expert did express an opinion regarding each meter that tampering had likely occurred at some point.

Disciplinary hearings were held for all employee Plaintiffs. Notice and amended notice were sent to the employee Plaintiffs. Following the hearings, each was found to have tampered with his water meter, and each was then fired. Plaintiffs filed union grievances claiming they were terminated without just cause. In the ensuring arbitration, the results of the disciplinary hearings were upheld. Plaintiffs filed suit against Defendants pursuant to 42 U.S.C. § 1983 for violations of their First and Fourth Amendment rights. DePalma contends that he was fired because of his association with his brother, Ronald DePalma. Clemente, Dailey, Werksma, Dennis Stol, Taylor, and Ray claim they were fired in retaliation for exercising their Fourth Amendment rights. Karen Stol claims she was deprived of her Fourth Amendment rights because Bartok used her husband's employment in the Department to coerce her into allowing inspection of their meter. Plaintiffs also allege defamation.

---

[4] Mike Shaffer was an employee in the Department and among the lowest users of water in the sample study. A warrant was issued to search his meter, but inspection did not produce any indications of tampering. His meter was not removed, and he is not a party to this litigation.

## II.  STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "In deciding a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor."  *Sagan v. United States*, 342 F.3d 493, 497 (6th Cir. 2003).  "Where the moving party has carried its burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the non-moving party, do not raise a genuine issue of material fact for trial, entry of summary judgment is appropriate."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

The court does not weigh the evidence to determine the truth of the matter, but rather, to determine if the evidence produced creates a genuine issue for trial.  *Sagan*, 342 F.3d at 497 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325).  The burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  The non-moving party must put forth enough evidence to show that there exists "a genuine issue for trial."  *Horton,* 369 F.3d at 909 (citing *Matsushita*, 475 U.S. at 587).  Summary judgment is not appropriate

when "the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

The existence of a factual dispute alone does not, however, defeat a properly supported motion for summary judgment—the disputed factual issue must be material. *See id.* at 252 ("The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed.'" (alteration in original) (citation omitted)). A fact is "material" for purposes of summary judgment when proof of that fact would establish or refute an essential element of the claim or a defense advanced by either party. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984) (citation omitted).

### III.  DISCUSSION

#### A.  Count I - Claims Under § 1983 and the Fourth Amendment

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege that (1) he was deprived of a right, privilege, or immunity secured by the federal Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law. *See Flagg Bros. v. Brooks*, 436 U.S. 149, 155-57 (1978); *Brock v. McWherter*, 94 F.3d 242, 244 (6th Cir. 1996). Aside from DePalma, all Plaintiffs allege deprivations of their Fourth Amendment right to be secure against unreasonable searches of their homes. The deprivations are based upon two distinct theories. First, Werksma, Dennis Stol, Karen Stol, and Ray assert that direct violations of their constitutional rights occurred when White and Bartok entered their homes to investigate their water meters

6

prior to obtaining warrants.  These Plaintiffs argue that permission to enter was not voluntarily given because it was obtained by improper threats of adverse employment actions if they exercised their constitutional rights.  Second, Clemente, Dailey, and Taylor assert indirect violations of their constitutional rights occurred when they were terminated after refusing to allow warrantless searches of their homes.  They argue that their terminations were not the result of a finding that they were engaged in water theft, but rather that they were fired because they refused to yield their constitutional rights.

### 1. Warrantless Search Claims of Werksma, Stol, Stol, and Ray

#### a. Plaintiffs' Rights Under the Fourth Amendment

Plaintiffs allege Defendants deprived them of Fourth Amendment right to be free from unreasonable search.  The Fourth Amendment guarantees, in part, "[t]he right of the people to be secure in their . . . houses . . . against unreasonable searches and seizures, shall not be violated."  U.S. Const. amend. IV.  The rights guaranteed by the Fourth Amendment have been made applicable to the states through the Fourteenth Amendment.  *Mapp v. Ohio*, 367 U.S. 643 (1961).  A warrantless search is "per se unreasonable," unless it falls within certain exceptions.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).  The most obvious of these exceptions covers searches conducted with consent.  *Id.* at 219. Irrespective of the circumstances under which consent was obtained, it is not disputed that Werksma, Karen Stol, and Ray actually consented to the searches.  Nor is it disputed that no searches were made when Clemente and Dailey refused to consent. Although Dennis Stol did not actually consent, Karen Stol's consent would be sufficient

7

to allow Bartok and White to search their house.  *United States v. Matlock*, 415 U.S. 164 (1974).

While Plaintiffs admit actual consent, they claim their consent had been coerced.  A constitutionally valid search based upon consent requires that the consent be "voluntary," which must be determined by looking to the totality of the circumstances.  *Schenckloth*, 412 U.S. at 222, 227.  The use of unlawful threats, however, weighs heavily against a finding that consent was voluntarily given.  *United States v. Ivy*, 165 F.3d 397, 402-03 (6th Cir. 1998).  Public employees, no less than other citizens, are entitled to and possessed of the full protection of the Constitution.  *Gardner v. Broderick*, 392 U.S. 273, 277 (1968); *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation*, 392 U.S. 280, 285 (1968).  In *Gardner*, the Court considered "whether a State may discharge an orfficer for refusing to waive a right which the Constitution guarantees him."  392 U.S. at 277.  The Court held that a State may not force public employees to choose between their constitutional rights and their employment.  *Id.* at 279.  Viewed in a light most favorable to the Plaintiffs, therefore, Bartok's "direct order" (given by a supervisor to an inferior) to allow a search of Plaintiff's water meters could have been perceived as an unlawful threat.  A jury might reasonably find that the unnecessary and unexplained injection of the employer-employee relationship into the investigation gave the Plaintiffs an implicit choice between asserting their Fourth Amendment rights and keeping their jobs.  Plaintiffs have thus shown the existence of a genuine issue of material fact for the jury, viz. whether consent to the searches was voluntary.

### b.  Defendants' Qualified Immunity Defense

Notwithstanding the foregoing, there remains the question of qualified immunity with respect to the actions of Duchane and Bartok. Unlike the voluntariness of Plaintiffs' consent, Defendants' claim of qualified immunity is a question of law to be decided by the court. *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009) (citations omitted). Qualified immunity "involves a two-fold inquiry: First, '[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? . . . [T]he next, sequential step is to ask whether the right was clearly established.'" *Barber v. Overton*, 496 F.3d 449, 453 (6th Cir. 2007) (quoting *Saucier v. Katz*, 553 U.S. 194, 201 (2001)). Pursuant to *Pearson v. Callahan*, a court may address either of these steps first. 129 S. Ct. 808, 818 (2009). Plaintiffs bear the burden of showing the rights violated were clearly established, but Defendants bear the burden of demonstrating that "the challenged act was objectively reasonable in light of the law existing at the time." *Everson v. Leis*, 556 F.3d at 494 (citations omitted). As this issue is now before the court on Defendants' motions for summary judgment, however, all facts and inferences must be considered in the light most favorable to Plaintiffs.

Whether a constitutional right is clearly established depends upon whether its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "'[I]n the light of pre-existing law the unlawfulness must be apparent.'" *Id.* The potential violation in this case necessarily involves the application of unlawful threats of adverse employment actions against public employees, which resulted in coerced consent to warrantless searches of their

9

homes. Merely requesting consent for a warrantless search does not deprive the recipient of the request of a constitutional right. *Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (en banc). Bartok's implied threat, at the direction of Duchane, would be a necessary element of the deprivation of Plaintiffs' constitutional rights. As discussed above, the existence of such an implicit threat would be a question for the jury and will be assumed for present purposes.

Although Plaintiffs present the act in question to simply be an unconsented and warrantless search, such a portrait paints with too broad a brush. The issue to be decided is whether Duchane and Bartok were legally required to realize that their efforts to obtain Plaintiffs' consent to inspections of their meters by referencing the employer-employee relationship could violate Plaintiffs' constitutional rights. The court cannot say that the contours of the Fourth Amendment right against unreasonable search and seizure are so clearly defined as to deprive Defendants of qualified immunity for their actions. Even viewing the facts in the light most favorable to Plaintiffs and drawing all reasonable inferences therefrom in a similarly favorable light, Plaintiffs have not presented any indication of the sort of blatant disregard or gross incompetent necessary to strip state actors of this important defense. *See Hunter v. Bryant*, 502 U.S. 224, 229 (1991). Defendants recognized the fundamental right against unreasonable searches, as evinced by their acceptance of the refusals of consent by Clemente and Dailey. Defendants also relied upon a reasonable interpretation of City of Lincoln Park Ordinance § 1042.08, which permits the agents of the City to access water meters "at all reasonable hours, . . . with the occupant's approval, upon any premises where water

service is established for the purpose of inspecting" the meters.  Although the ordinance requires approval, it was permissible for Duchane and Bartok to encourage Plaintiffs to give consent.  *See Hussein v. City of Perrysburg*, No. 09-4054, 2010 WL 3271727 (6th Cir. Aug. 20, 2010) (state officials are entitled to qualified immunity where they inform a citizen of their view that the citizen is in violation of the law, including when they express an intention to initiate civil or criminal proceedings against the citizen).

Relying upon their interpretation of the ordinance and after consulting with the City's attorney and with the Wayne County Prosecutor's Office, Duchane and Bartok were permitted to do the following without depriving Plaintiffs of their constitutional rights: 1) request consent to inspect the meters, 2) inform Plaintiffs of the ordinance and their interpretation of it, 3) inform Plaintiffs that they would obtain a warrant if Plaintiffs refused, and 4) inform Plaintiffs that Bartok, as the head of the Department, was authorized by the ordinance to inspect the meters.  Defendants could not, however, 1) inspect the meters without consent, 2) require Plaintiffs to consent to the inspections, or 3) require Plaintiffs to allow inspection simply because they were employees.  Allowing such room for imprecise language and misunderstanding as must necessarily be involved in the administration of public office, *see Pearson*, 128 S. Ct. at 815, the distinction between informing Plaintiffs that Bartok's position as their supervisor granted him the authority to inspect any meter in the City and demanding Plaintiffs allow inspections by Bartok because they were employees under his supervision is less a bright line than a disputed border.  Had Bartok told Plaintiffs that as employees they should be familiar with the ordinance and his authority under it, would that better be viewed as an unlawful threat or, on the other hand, merely an attempt to persuade a reluctant resident that the inspection was duly authorized under the City's ordinances?

Such examples are not difficult to multiply. Plaintiffs may be able to make a showing of a constitutional deprivation, but they have not presented sufficient facts to show a deprivation so obvious that Duchane and Bartok are not to be afforded that immunity from civil liability generally granted public officials in the reasonable and good faith execution of their duties. Because qualified immunity applies unless Plaintiff can show a deprivation of a "clearly established" constitutional right, the uncertainty involved in the scope of the right requires the application of qualified immunity in this case.

### 2. Retaliation Claims of Clemente, Dailey, and Taylor

Plaintiffs also allege deprivation of their Fourth Amendment rights by retaliation for refusing to yield their Fourth Amendment rights. "[R]etaliation for the exercise of constitutional rights is itself a violation of the Constitution." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc) (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 n.10 (1998)). Clemente and Dailey refused to allow inspection of their water meters until search warrants issued. The other Plaintiffs did not so refuse, but they maintain their allegations of retaliation on a theory of perceived assertion of constitutional rights. However, there is no basis for such a finding with respect to Werksma, Karen Stol, Dennis Stol, or Ray. The assertion that these Plaintiffs were mistakenly perceived as having engaged in the protected conduct of demanding their Fourth Amendment rights is undeniably refuted by their own admission that they yielded their Fourth Amendment rights when Bartok demanded entry. Clemente and Dailey did demand those rights, and they were grudgingly observed. The disciplinary hearing letters made it clear that all employee Plaintiffs were terminated because they were found to have tampered with their water meters. (Pl. Resp. Ex. V.) The correctness of these investigations is not at

issue here.  An improvident employment decision does not deprive a person of any rights under the Constitution or laws, such as to give rise to a civil action under § 1983.  To defeat a motion for summary judgment, Plaintiffs are only required to provide evidence from which reasonable jurors could find in their favor.  However, no reasonable juror could find that Werksma, Stol, Stol, or Ray had been targeted for retaliation based on their initial reluctance to allow Bartok and White to inspect their meters.  Bartok unquestionably had personal knowledge that they allowed inspection, and Plaintiffs' evidence necessarily leads to the same conclusion.  Even considering the evidence and inferences in the light most favorable to Plaintiffs, a finding of retaliation against Werksma, Stol, Stol, or Ray would be mere speculation.

With respect to Clemente and Dailey, however, the claims are slightly more plausible.  Both initially refused to allow inspection of their water meters, invoking their Fourth Amendment rights.  Viewed in the light most favorable to Plaintiffs, Taylor could have been exercising his Fourth Amendment right by purposely avoiding Bartok and White.  Upon issuance of search warrants, the meters of all Plaintiffs were eventually removed and inspected.  After investigation, Clemente, Dailey, and Taylor were notified of the allegations against them and hearings were held.  The notice letters did include statements that each Plaintiff "disobeyed a direct order." (Pl. Resp. Ex. U.)  It would not strain reason too far to imagine—based solely on that information—that Clemente, Dailey, and Taylor (by implication) had been the target of retaliation for exercising their constitutional rights.  As discussed above, it was imprudent for Defendants to demand access to search Plaintiffs' homes based on their status as employers, supervisors, or managers.  This is all the more so because they had an alternative, legal ground upon

13

which to demand access under Lincoln Park Ordinance § 1042.08.  However, the disciplinary hearing letters undeniably indicate that the adverse employment actions were not premised upon assertion of constitutional rights, but rather upon evidence of tampering with water meters.  In fact, the amended notices of disciplinary hearings of all Plaintiffs included the same general charge of insubordination.  (Pl. Resp. Ex. U.)  The letters informing Plaintiffs of the results of the disciplinary hearings, however, make no reference to their refusals to allow warrantless searches.  (Pl. Resp. Ex. V.)  The letters detail the evidence and conclude with termination for tampering with water meters.  Grievance arbitration proceedings were held, upholding the results of the internal disciplinary hearings.  Even in a light most favorable to Plaintiffs, the record evidence indicates that they were terminated for cause—not in retaliation.  Whether or not Defendants were in fact motivated by retaliatory intent with respect to Clemente, Dailey, and Taylor, no evidence has been presented that there was insufficient cause to terminate their employment or that they were treated differently in any respect.

Plaintiffs have failed to present evidence that would support a reasoned finding of retaliation.  An issue of fact is not genuine if the respondent's assertion relies on nothing more than mere speculation, conjecture, or guesswork.  *See Arendale v. City of Memphis*, 519 F.3d 587, 601 (6th Cir. 2008) (citing *Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)) (summary judgment appropriate where police officer offered nothing but his own opinions to support a claim of unconstitutional basis for adverse employment action).  Although questions of credibility and fact are to be decided by the jury, there must be a basis in the evidence to support a factual finding.  Defendants have presented evidence that internal investigations determined that Plaintiffs had

nonfunctioning water meters, despite their employment in the department that oversees the meters. Plaintiffs have not expressly denied the state of their meters, nor have they offered any substantive critique of the internal investigation. Plaintiffs have merely attacked the probable cause for checking their meters and the methods used in attempting to gain access to the meters. However, Plaintiffs have neglected the necessary proof of the causal link between the refusal or perceived refusal to allow inspection and the termination. *See Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir. 2005) (citing *Thaddeus-X*, 175 F.3d at 394). Plaintiffs offer little more than a conspiracy theory in opposition to substantial evidence presented by Defendants of perceived good cause for termination. This is insufficient to establish a genuine issue of material fact. Werksma, the Stols, and Ray actually allowed inspection of their water meters, which showed signs of tampering. Clemente and Dailey refused, but their meters likewise showed evidence of tampering. Defendants did not seek access to Taylor's meter until after obtaining a warrant, upon execution of which they found his meter also showed signs of tampering. Nothing indicates that refusing to yield constitutional rights played any role in the adverse employment actions. There is insufficient evidence for any reasonable jury to find in favor of Plaintiffs on Count I based on either a direct deprivation or retaliation theory.

### B. Count II - Claims Under § 1983 and the First Amendment

DePalma alleges that Defendants deprived him of his First Amendment freedom of association by terminating his employment after his brother, Ronald DePalma, admitted tampering with his water meter. As above, retaliation for exercising a

15

constitutional right is equivalent to deprivation of the right. *Thaddeus-X*, 175 F.3d at 394. Plaintiff has a constitutional right to associate with members of his immediate family, such as his brother. *See Johnson v. City of Cincinnati*, 310 F.3d 484, 500 (6th Cir. 2002). However, there must be a causal connection between the exercise of the constitutional right and the retaliatory action, "that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X*, 175 F.3d at 394. DePalma has presented insufficient evidence for any reasonable jury to determine that the fraternal relationship motivated or caused the termination. Defendants chose to begin their examination of potential water theft with department employees with particularly low water usage. Both DePalma brothers independently met the criteria.

Viewed in a light most favorable to Plaintiff, nothing in the record suggests that DePalma was subject to retaliation because of his brother's wrongdoing. Indeed, precisely the same procedures were employed in investigating DePalma's water meter, with one exception. Unlike the other employees visited on June 30, 2009, DePalma was not visited by Bartok and White, ostensibly because they expected his brother would warn him if DePalma had in fact tampered with his water meter. No commands or requests for consent to a warrantless search were issued to DePalma. His water meter was inspected, seized, and examined pursuant to a warrant. A disciplinary hearing was held. Having found evidence that someone had tampered with DePalma's meter, Duchane terminated his employment.

Even had DePalma introduced evidence sufficient to support a finding that Defendants were motivated to fire him because of his family connection, Defendants would still be entitled to summary judgment. If a plaintiff alleging retaliation for the

16

exercise of First Amendment rights produces evidence showing the retaliatory motive was at least a partial cause of some adverse act by a defendant, the defendant then bears the burden of proving the same action would have been taken even in the absence of the improper motive. *Kreuzer v. Brown*, 128 F.3d 359, 363 (6th Cir. 1997) (citing *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 287 (1977)). Upon inspection, a retained expert found indications that there had been tampering with DePalma's water meter. DePalma had extremely low water usage over the two year period in question. Finally, DePalma had both the expertise and access to supplies needed to replace the security pin in his meter. The overwhelming evidence considered by Defendants would have resulted in termination regardless of any retaliatory motive. Such inference is inescapable, even viewing all evidence in the light most favorable to DePalma. Therefore, Defendants are entitled to summary judgment on this count.

## C. Section 1983 Liability of Vaslo

During the course of the events underlying this case, Vaslo served as mayor of Lincoln Park. Although Plaintiffs make no specific allegations about Vaslo's involvement in the claimed First and Fourth Amendment violations, they make these claims against Defendants generally. Vaslo is thus entitled to summary judgment on Counts I and II on two grounds. First, Plaintiffs have failed to allege any actions or other basis for liability on the part of Vaslo. There is no genuine issue of material fact with respect to Vaslo's liability for under § 1983 because there are no allegations of fact even purporting to support Vaslo's liability under § 1983. Second, Vaslo cannot be held liable for deprivation of constitutional rights under § 1983 based on a theory of *respondeat superior*. *Ascroft v. Iqbal*, 129 S.Ct. 1937, 1948 (2009) (citing *Monell v. New York City*

17

*Dept. of Soc. Svcs.*, 436 U.S. 658, 691 (1978)). Therefore, Vaslo is entitled to summary judgment as a matter of law.

### D. Section 1983 Liability of the City of Lincoln Park

Although municipalities may be liable under § 1983 for deprivations of civil rights, such liability requires a showing that the deprivation resulted from the "execution of a policy or custom" of the municipality. *Monell*, 436 U.S. at 695. Municipalities are not subjected to liability for deprivation of civil rights under the doctrine of *respondeat superior*. *Id.* at 691. Instead, municipal liability must be based on actions of those within the municipality authorized to make final policy decisions, and "whether an official had final policymaking authority is a question of state law." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 482-83 (1986).

The definition of a policy or custom based upon one instance of its implementation is inherently problematic. Plaintiffs do not identify any specific policy. The strongest policy that can be supported by Plaintiffs' complaint and response is a policy decision by Duchane to have Bartok make unconstitutional demands for warrantless searches of employee homes. Viewing all facts in the light most favorable to Plaintiffs, there is no indication of any policy or custom either promulgated by or ratified by Vaslo or the city council. Nor is there any indication that the alleged policy in question extended beyond the circumstances of the investigations of June 30, 2009. Most damaging to Plaintiffs' theory, however, is Lincoln Park Ordinance § 215.10(c): "The City Manager . . . shall carry out the policies formulated by the Mayor and Council." The single instance of an official without final policymaking authority directing certain

18

actions to achieve broad policy goals does not create a "policy or custom" as required under *Monell*. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Duchane's actions in directing the investigations of Plaintiffs' meters were in execution of a general policy of reducing water loss and improving efficiency. The decision to order employees to submit to warrantless searches cannot "fairly be said to represent official policy." *Monell*, 436 U.S. at 694. It was merely one of the various executive decisions constantly being made in light of the particular circumstances then existing. The concept of a "policy or custom" necessarily implies something different from the misapplication of municipal authority in a particular situation. Plaintiffs have failed to present evidence sufficient to generate a triable question of fact regarding municipal liability under § 1983. Therefore, summary judgment for the City is appropriate.

### E. Count III - Defamation

Upon the foregoing, the court will grant Defendants' motions for summary judgment on all claims over which this court has original jurisdiction. As a result of granting summary judgment on all claims under § 1983, no further claims invoking federal jurisdiction under 28 U.S.C. § 1331 will remain. A district court has discretion to decline supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A district court also has the power to dismiss or remand claims *sua sponte* for lack of subject matter jurisdiction. *See, e.g.*, *Douglas v. E.G. Baldwin & Assocs.*, 150 F.3d 604, 607 (6th Cir. 1998). Because Plaintiffs' remaining claims under Count III involve Michigan defamation law, they are

best heard in a Michigan court. The court will therefore dismiss Count III without prejudice.

## IV. CONCLUSION

IT IS ORDERED that the motion for summary judgment by City of Lincoln Park [Dkt. # 29] is GRANTED IN PART. Summary judgment is granted on Counts I and II. Count III is DISMISSED without prejudice pursuant to 42 U.S.C. § 1367(c)(3).

IT IS FURTHER ORDERED that the motion for summary judgment by Bartok, Duchane, and Vaslo [Dkt. # 42] is GRANTED IN PART. Summary judgment is granted on Counts I and II. Count III is DISMISSED without prejudice pursuant to 42 U.S.C. § 1367(c)(3).

        S/Robert H. Cleland
        ROBERT H. CLELAND
        UNITED STATES DISTRICT JUDGE

Dated: November 5, 2010

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, November 5, 2010, by electronic and/or ordinary mail.

        S/Lisa Wagner
        Case Manager and Deputy Clerk
        (313) 234-5522